IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

KENNETH B. MARTIN; CHARLES N.      *
CODY, SR.; BOBBY D. HARPER;        *
SAMMIE L. SIAS; KENNETH L.         *
WILLIAMS; A.J. SAUNDERS; MELVIN    *
IVEY; GAIL HICKS; AND JOE E.       *
HOWARD,                            *
                                   *
        Plaintiffs,                *
                                   *
              v.                   *         CV 112-058
                                   *
AUGUSTA-RICHMOND COUNTY,           *
GEORGIA, COMMISSION; DEKE S.       *
COPENHAVER, in his official        *
capacity as Mayor of Augusta-      *
Richmond County; RICHMOND          *
COUNTY, GEORGIA, BOARD OF          *
EDUCATION; ALEX HOWARD, in his     *
official capacity as President     *
of the Richmond County Board of    *
Education; LYNN BAILEY, in her     *
official capacity as Executive     *
Director of the Richmond County    *
Board of Elections; DAVID          *
RALSTON, in his official           *
capacity as Speaker of the         *
Georgia House of                   *
Representatives; and TOMMIE        *
WILLIAMS, in his official          *
Capacity as President Pro          *
Tempore of the Georgia Senate,     *
                                   *
        Defendants.                *

---

**O R D E R**

---

This reapportionment case was initiated due to population

shifts in Richmond County, Georgia which were revealed by the

decennial 2010 census. Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment seeking declaratory, injunctive, and remedial relief relating to the reapportionment of the districts for the Augusta-Richmond County Commission ("County Commission") and the County Board of Education of Richmond County ("Board of Education"). (Doc. no. 1.)

## I. BACKGROUND

In this Court's May 16, 2012 Order, the Court declared that the existing districts for the County Commission and Board of Education were unconstitutional because they violated the "one person, one vote" principle. Accordingly, the Court enjoined further use of those unconstitutional districts and enjoined the County Board of Elections from accepting qualifications and conducting elections under the existing malapportioned County Commission and Board of Education district maps. Additionally, the qualifying dates for the County Commission and Board of Education seats subject to this election cycle, scheduled for May 23-25, 2012, were delayed until further order of this Court. Finally, after considering the specialized skill required in map drawing and reapportionment, the Court appointed the Georgia Legislative and Congressional Reapportionment Office (and its

necessary staff, including Regina Harbin Wright), as the Court's technical advisor and consultant in this matter.

As indicated at the injunction hearing held on May 16, 2012, the Court created a preliminary map for the eight County Commission and Board of Education single member districts and a preliminary map for the two super districts based on the 2010 decennial census results.  The preliminary maps were presented for review by the parties and attached to the Court's June 5, 2012 Order as the Court's Exhibits 1 and 2.  (Doc. no. 44.)  The parties were afforded the opportunity to file written comments regarding the preliminary maps.  The time for commenting on the maps has passed, and the Court will now adopt final remedial maps and set qualifying dates for the County Commission and Board of Education seats with terms expiring December 31, 2012.

## II. DISCUSSION

Because the existing maps are unconstitutional, the Court, due to the failure of the Georgia General Assembly to legislatively implement a new map, is faced with the task of drawing new constitutional districts based on the 2010 decennial census results.  Indeed, the Georgia General Assembly has the duty and responsibility to reapportion the County Commission and Board of Education districts during a regular or special session.  Miller v. Johnson, 515 U.S. 900, 915 (1995) ("It is

3

well settled that 'reapportionment is primarily the duty and responsibility of the State.'"); Smith v. Cobb Cnty. Bd. of Elections & Registrations, 314 F. Supp. 2d 1274, 1286 (N.D. Ga. 2002). However, the 2012 session of the Georgia General Assembly ended without the enactment of a map or plan that creates constitutionally proportional districts for the County Commission and Board of Education. Furthermore, it is undisputed that the Georgia General Assembly will not be reconvening prior to the upcoming 2012 elections. "In the wake of a legislature's failure constitutionally to reconcile . . . conflicting state and federal goals . . . a federal court is left with the unwelcome obligation of performing in the legislature's stead . . . ." Connor et al. v. Finch et al., 431 U.S. 407, 415 (1977); see also Swann et al. v. Charlotte-Mecklenburg Bd. of Educ. et al., 402 U.S. 1, 16 (1971) (noting that "judicial powers may be exercised only on the basis of a constitutional violation" and "[j]udicial authority enters only when local authority defaults.").

A.  **The New Map Was Created by the Court**

Georgia is a covered district under § 5 of the Voting Rights Act of 1964, as amended. Therefore, any legislatively enacted reapportionment plan must be submitted for preclearance to either the Department of Justice or the District Court for the District of Columbia. 42 U.S.C. § 1973c. However, when a

4

federal court devises its own plan, the new plan does not require federal preclearance. See Lopez et al. v. Monterey Cnty. et al., 525 U.S. 266, 286 (1999). Therefore, with the assistance of the Georgia Legislative and Congressional Reapportionment Office, the Court has fashioned its own map for the eight County Commission and Board of Education single member districts and the two super districts, using the 2002 plan as its benchmark.[1]

**B. The "One Person, One Vote" Requirement Is Met**

While legislative bodies are given some leeway with regard to population deviations if those population deviations are supported by legitimate state interests, a court-ordered plan must be held to higher standards than a State's own plan unless there are persuasive justifications. See Chapman et al. v. Meier, 420 U.S. 1, 26-27 (1975). Moreover, "a court-ordered reapportionment plan of a state legislature must avoid use of multimember districts, and, as well, must ordinarily achieve the goal of population equality with little more than de minimus variation." Id. If a court deviates from substantial equality

---

[1] The Ad Hoc Redistricting Committee passed Plan 3R (Final) and submitted it to the County Commission and Board of Education as a recommendation only. Although it was not submitted to the Georgia General Assembly by the Ad Hoc Committee for adoption, Wayne Howard, a member of the local Georgia House of Representative delegation, submitted Plan 3R (Final) to the Georgia House as HB 923 and HB 924. The Georgia House of Representatives approved Plan 3R (Final), but the Georgia Senate approved a wholly separate plan. The Georgia General Assembly adjourned the 2012 legislative session without enacting a final plan. Because the General Assembly did not pass Plan 3R (Final), the Court's benchmark in this case is the 2002 plan.

in drawing its plan, the court must support that deviation with "historically significant state policy or unique features." Id. at 26.   In devising the remedial plan, this Court attempted to reduce the population deviations as much as possible, while minimizing the unnecessary splitting of precincts.

A final remedial map of the new single member districts and a map of the new super districts, along with a legal description of each district and a statistics sheet for each map describing certain relevant population percentages, are attached to this Order as the Court's Exhibit 1 and 2 ("the Final Plan").   The Final Plan contemplates the ideal population for each single member district as 25,069 and the ideal population for each super district as 100,275.   The Final Plan has eight single member districts and two super districts, like the 2002 plan, and they break down accordingly:

| District | Population | Deviation % |
|---|---|---|
| 1 | 25,126 | 0.23% |
| 2 | 25,049 | −0.08% |
| 3 | 25,081 | 0.05% |
| 4 | 25,027 | −0.17% |
| 5 | 25,038 | −0.12% |
| 6 | 25,078 | 0.04% |

| | | |
|---|---|---|
| 7 | 24,955 | -0.45% |
| 8 | 25,195 | 0.50% |
| 9 | 100,240 | -0.03% |
| 10 | 100,309 | 0.03% |

The new single member district map has an overall deviation of 0.96%, and no single member district deviates above the ideal size of 25,069 by more than 0.50% or less than -0.45%. The new single member district map also has a significantly lower overall deviation than both the 2002 plan (35.92%) and the 3R Plan (Final) (4.42%). Additionally, the new super district map has an overall deviation of 0.07%, and the super districts only deviate from the ideal size by 0.03% and -0.03% respectively. The Court acknowledges that the final remedial maps contain a small number of split precincts. However, such a result is unavoidable in light of the Court's population deviation objectives.

Accordingly, the Court finds that the Final Plan achieves the goal of population equality with de minimus variation and comports with the "one person, one vote requirement."

## C. Traditional Redistricting Principles

Apart from mathematical percentages, the Court was also guided by traditional redistricting principles when drawing the new maps. These redistricting principles are: changing the old

districts as little as possible, protecting incumbency, compactness, contiguity, maintenance of communities of interest, and compliance with §§ 2 and 5 of the Voting Rights Act. Johnson v. Miller, 922 F. Supp. 1556, 1564-66 (S.D. Ga. 1995). The most significant of these factors falls under the gambit of the "minimum change doctrine." See Upham v. Seamon, 456 U.S. 37, 43 (1982); Miller, 922 F. Supp. at 1559. Essentially, the Court is required to change only the faulty portions of the benchmark plan, as subtly as possible, in order to make the new plan constitutional. Id. Keeping the minimum change doctrine in mind, the Court only made the changes it deemed necessary to guarantee substantial equality and to honor traditional redistricting concerns. In fact, in every single member and super district, the Court preserved at least 74.19% of the benchmark district in the new plan. Thus, the Court preserved the core constituency of each district.

Furthermore, of the twenty incumbents on the County Commission and Board of Education, none were drawn out of their current district in the Final Plan. Moreover, none of the incumbents are competing for the same district seat. All ten districts are also both contiguous and compact. Contiguity requires that a person is able to walk to each part of the district without having to go through another district. Crumley, et al. v. Cobb Cnty. Bd. of Elections & Voter

8

<u>Registration</u>, No. 1:12-CV-1301, doc. no. 45 at 28 (N.D. Ga. May 9, 2012).   Compactness is an aesthetic factor requiring that there be no strangely shaped or bizarre looking districts.   <u>Id.</u> at 27.   The Court finds that the Final Plan respects these two principles.

The Court also considered the preservation of communities of interests.   "People who share communities of interest logically belong within the same . . . district." <u>Miller</u>, 922 F. Supp. at 1562-63.   The parties' comments on the preliminary maps relate almost exclusively to communities of interest. Plaintiffs as well as the Board of Education, Defendant Howard, and the County Commission all seek to have the neighborhood of Sandridge united into one single member district.   The Board of Education and Defendant Howard also seek to have the neighborhood of Wood Lake united into one single member district.   Finally, the Board of Education, Defendant Howard, and the County Commission request that Fort Gordon be divided equally into three single member districts, instead of the two single member districts that are included in the preliminary maps.[2]

---

[2] The parties failed to provide legal support, and the Court has not found any, for the proposition that a federal district court, when redrawing maps, should give special consideration to the military voting age population based on the military's historical propensity to not vote in the districts where members reside.   Moreover, as discussed below, the Court cannot alter the preliminary maps in the manner proposed by the Board of Education and County Commission without violating equal population principles and the doctrine of minimal change.

Although the Court thoroughly considered the parties' comments to the preliminary maps and recognizes the merit of a single commissioner and Board member representing the interests of the Sandridge and Wood Lake neighborhoods, the Court finds that it cannot change the preliminary map to accommodate these comments in light of its application of constitutional considerations and traditional redistricting principles. For example, Plaintiffs' request to move Census Block 2000 from District 8 to District 4 in an effort to unite a portion of the Sandridge neighborhood would cause a deviation of 3.09% in District 4 and a deviation of -2.76% in District 8. This would result in a total overall deviation of 5.58% for the single member district map. (See Doc. no. 51.) As previously stated, the Court's remedial maps are held to a more stringent standard than legislatively created maps, and the Court cannot have more than de minimus population deviations. See Chapman, 420 U.S. at 26-27. Adopting the proposed changes suggested by the parties would force the Court to ignore the minimal change doctrine and equal population principles, something this Court is unwilling to do.

D. **Requirements of the Voting Rights Act of 1964**

Although in redistricting, "the overriding objective must be substantial equality of population among the various districts," Reynolds v. Sims, 377 U.S. 533, 579 (1964), all redistricting

plans must comply with the Voting Rights Act of 1965, as amended.   42 U.S.C. § 1973 et *seq.*   All jurisdictions must follow § 2 of the Voting Rights Act prohibiting minority vote dilution.   In some jurisdictions, including Georgia and its political subdivisions, redistricting plans must also comply with § 5; that is, the plans must not have the "purpose or effect of denying or abridging the right to vote based on race, color or membership in a language minority."   42 U.S.C. § 1973c.

1.  Section Two Analysis

Section 2 of the Voting Rights Act prohibits States from imposing or applying any voting practice or procedure that dilutes, denies, or abridges the right of any citizen of the United States to vote on account of that citizen's race or color.  See 42 U.S.C. § 1973.  In analyzing whether a particular apportionment plan complies with § 2, a court must consider whether, under the totality of circumstances, minorities have been granted an equal opportunity to participate in the political process and to elect representatives of their choice. Georgia v. Ashcroft, 539 U.S. 461, 478 (2003); see also Thornburg v. Gingles, 478 U.S. 30, 47 (1986) (noting the "essence" of a § 2 vote dilution claims is that "a certain electoral law, practice, or structure . . . cause[s] an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives").

After considering the totality of circumstances, the Court finds that under its Final Plan, there has been no dilution of the minority voting strength, and minorities have been granted an equal opportunity to participate in the political process and to elect representatives of their choice.

2. Section Five Analysis

In contrast to § 2, which focuses upon ensuring that minority voters everywhere are afforded an equal opportunity to elect candidates of their choice, § 5 is directed toward preventing retrogression in the established opportunities of minority citizens to elect candidates of their choice in particular areas of the country with histories of discrimination in voting laws. Reno v. Bossier Parrish Sch. Bd., 528 U.S. 320, 335 (2000) ("Bossier Parrish II"). These "covered jurisdictions," including Georgia and its political subdivisions, must prove that redistricting plans have neither the purpose nor effect of worsening minority citizens' right to vote. 42 U.S.C. § 1973c. "[A] retrogression inquiry under § 5, 'by definition, requires a comparison of a jurisdiction's new voting plan with its existing plan.'" Georgia, 539 U.S. at 478 (quoting Reno v. Bossier Parish Sch. Bd., 520 U.S. 471, 477 (1997) ("Bossier Parish I")). Here, the benchmark plan is the map drawn in 2002. The population and minority breakdown for

the Court's Final Plan in comparison to the 2002 benchmark plan is as follows:

| DISTRICTS | 2002 EXISTING BENCHMARK PLAN | 2012 FINAL REMEDIAL PLAN | DEVIATION |
|---|---|---|---|
| **DISTRICT 1** | | | |
| % Total Black | 63.54% | 67.90% | + 4.36% |
| % Total Black VAP[3] | 60.27% | 64.57% | + 4.30% |
| | | | |
| **DISTRICT 2** | | | |
| % Total Black | 75.77% | 70.25% | − 5.52% |
| % Total Black VAP | 72.75% | 67.17% | − 5.58% |
| | | | |
| **DISTRICT 3** | | | |
| % Total Black | 40.56% | 40.51% | −0.05% |
| % Total Black VAP | 37.81% | 38.07% | + 0.26% |
| | | | |
| **DISTRICT 4** | | | |
| % Total Black | 76.33% | 68.17% | −8.16% |
| % Total Black VAP | 75.49% | 65.16% | −10.33% |
| | | | |

---

[3] "VAP" means voting age population.

| DISTRICT 5 | | | |
|---|---|---|---|
| % Total Black | 74.12% | 72.63% | -1.49% |
| % Total Black VAP | 71.45% | 69.37% | -2.08% |
| | | | |
| DISTRICT 6 | | | |
| % Total Black | 51.17% | 52.43% | +1.26% |
| % Total Black VAP | 47.65% | 49.35% | +1.70% |
| | | | |
| DISTRICT 7 | | | |
| % Total Black | 27.66% | 27.48% | -0.18% |
| % Total Black VAP | 25.29% | 25.12% | -0.17% |
| | | | |
| DISTRICT 8 | | | |
| % Total Black | 31.39% | 33.99% | +2.60% |
| % Total Black VAP | 29.65% | 32.28% | +2.63% |
| | | | |
| DISTRICT 9 | | | |
| % Total Black | 72.84% | 69.73% | -3.11% |
| % Total Black VAP | 70.21% | 66.54% | -3.67% |
| | | | |

| DISTRICT 10 | | | |
|---|---|---|---|
| % Total Black | 37.40% | 38.61% | +1.21% |
| % Total Black VAP | 34.69% | 35.96% | +1.27% |

The Court finds that the Final Plan has not worsened the Augusta-Richmond County minority populations' equal opportunity to elect candidates of choice in a manner that constitutes retrogression under § 5.  Like the benchmark plan, the new maps have four majority-minority single member districts and one majority-minority super district.  The benchmark plan had four clear majority-minority single member districts: District 1 with a 60.27% black VAP, District 2 with a 72.75% black VAP, District 4 with a 75.49% black VAP, and District 5 with a 71.45% black VAP.  District 6, though not a majority-minority district, had a "strong black influence" with a black VAP of 47.65%.  See Markham v. Fulton Cnty. Bd. of Registrations & Elections, No. 1:02-CV-1111, 2002 WL 32587313, at *9 (N.D. Ga. May 29, 2002).  The benchmark plan also had one majority-minority super district: District 9 with a 70.21% black VAP.

The Final Plan, like the benchmark plan, has four majority-minority single member districts: District 1 with a 64.57% black VAP, District 2 with a 67.17% black VAP, District 4 with a 65.16% black VAP, and District 5 with a 69.37% black VAP.

15

District 6 remains a single member district with a "strong black influence." Indeed, its black VAP has increased from 47.65% to 49.35%. Finally, the new maps also have one majority-minority super district: District 9 with a 66.54% black VAP.

Based on the above analysis, the Court finds that retrogression, as it is prohibited under § 5 of the Voting Rights Act, has not occurred with the implementation of the Final Plan.

### E. Qualification and Election Dates

Because the Final Plan has now been created, the Court finds it prudent to set the qualifying dates for the County Commission and Board of Education seats that were previously scheduled for May 23-25, 2012. As requested by Defendants, the Court will now schedule the **qualification period to begin at 9:00 a.m. on August 6, 2012 and to end at 12:00 noon on August 8, 2012.** Furthermore, elections for the County Commission and Board of Education seats with terms expiring December 31, 2012, will be conducted on **November 6, 2012,** in conjunction with the general elections in order to avoid the unnecessary cost to the citizens of Richmond County that a special election would require. Accordingly, Defendants' Motion for Injunctive Relief (doc. no. 30) is **GRANTED.**

### III.   CONCLUSION

For the reasons set forth above, the Court adopts the Final Plan attached to this Order as Court's Exhibits 1 and 2. Additionally, Defendants' motion for injunctive relief (doc. no. 30) is **GRANTED** and the qualification period for the County Commission and Board of Education seats shall begin at 9:00 a.m. on August 6, 2012 and end at 12:00 noon on August 8, 2012. Finally, Plaintiffs are **ORDERED** to submit a brief concerning the issue of costs and attorney's fees pursuant to 42 U.S.C. § 1988 within **ten (10) days** from the date of this Order.   Defendants may respond within **five (5) days** from the date Plaintiffs submit their brief.

**ORDER ENTERED** at Augusta, Georgia, this _19th_ day of June, 2012.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

# Court's Exhibit 1

Final Remedial Map for Eight County
Commission and Board of Education
Single Member Districts

Richmond County Commission and School Board Districts - as drawn by Federal Court



Plan Name: **FedCt-RichCCSB-2012**     Plan Type : **Local**     User: **Gina**     Administrator: **FEDCT**

| DISTRICT | POPULATION | DEVIATION | % DEVIATION | BLACK | % BLACK | BLACK COMBO | TOTAL BLACK | %TOTAL BLACK | HISP. OR LATINO | %HISP |
|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 25,126 | 57 | 0.23% | 17,061 | 67.90% | 342 | 17,403 | 69.26% | 518 | 2.06% |
| VAP | 19,530 | | | 12,611 | 64.57% | 148 | 12,759 | 65.33% | 358 | 1.83% |
| 002 | 25,049 | -20 | -0.08% | 17,596 | 70.25% | 342 | 17,938 | 71.61% | 773 | 3.09% |
| VAP | 18,710 | | | 12,568 | 67.17% | 159 | 12,727 | 68.02% | 503 | 2.69% |
| 003 | 25,081 | 12 | 0.05% | 10,161 | 40.51% | 391 | 10,552 | 42.07% | 1,118 | 4.46% |
| VAP | 19,923 | | | 7,584 | 38.07% | 203 | 7,787 | 39.09% | 814 | 4.09% |
| 004 | 25,027 | -42 | -0.17% | 17,060 | 68.17% | 610 | 17,670 | 70.60% | 1,731 | 6.92% |
| VAP | 17,981 | | | 11,717 | 65.16% | 293 | 12,010 | 66.79% | 1,250 | 6.95% |
| 005 | 25,038 | -31 | -0.12% | 18,185 | 72.63% | 463 | 18,648 | 74.48% | 1,115 | 4.45% |
| VAP | 18,147 | | | 12,589 | 69.37% | 215 | 12,804 | 70.56% | 732 | 4.03% |
| 006 | 25,078 | 9 | 0.04% | 13,149 | 52.43% | 459 | 13,608 | 54.26% | 869 | 3.47% |
| VAP | 18,298 | | | 9,030 | 49.35% | 160 | 9,190 | 50.22% | 548 | 2.99% |
| 007 | 24,955 | -114 | -0.45% | 6,858 | 27.48% | 354 | 7,212 | 28.90% | 1,063 | 4.26% |
| VAP | 20,188 | | | 5,071 | 25.12% | 151 | 5,222 | 25.87% | 778 | 3.85% |
| 008 | 25,195 | 126 | 0.50% | 8,563 | 33.99% | 397 | 8,960 | 35.56% | 1,020 | 4.05% |
| VAP | 18,467 | | | 5,961 | 32.28% | 141 | 6,102 | 33.04% | 647 | 3.50% |

Total Population:     200,549
Ideal Value:     25,069

**Summary Statistics**

Population Range:     24,955   to   25,195

Absolute Overall Range:     240

Relative Range:     -0.45%   to   0.50%

Relative Overall Range:     0.96%

DATA SOURCE: 2010 US Census PL94-171 Population Cou

## SINGLE MEMBER DISTRICTS LEGAL DESCRIPTION

**DISTRICT 001**
**RICHMOND COUNTY**
VTD: 245101 - 101
001000:
  2015  2017  3001  3002  3003  3004  3005  3006  3009  3010
3011  3012
  3013  3014  3015  3016  3017  3020  3021
001100:
  1018  1028  1029  1030  1031  1042
001200:
  1000  1001  1002  1003  1004  1013  1020  1021  1022  1023
1024
001300:
  1010  2005  2006  2010  2011
VTD: 245102 - 102
VTD: 245103 - 103
VTD: 245104 - 104
VTD: 245105 - 105
VTD: 245106 - 106
VTD: 245107 - 107
VTD: 245108 - 108
VTD: 245109 - 109
VTD: 245110 - 110
VTD: 245111 - 111
VTD: 245112 - 112
VTD: 245113 - 113
VTD: 245202 - 202
010510:
  1014  1015
010511:
  1000  1001  1002  1003  1004  1005  1006  1015  1016  1017
1018  1019
  1020  1021  1028  1029  1030  1031  1032  1033  1034  1035
1038  2000
  2001  2002  2003  2009  2022
VTD: 245205 - 205
VTD: 245805 - 805
010600:
  4146  4158  4161  4162
010706:
  1004  1005  1009  1012  1013  1014  1015  1016  1017  1018
1019  1020
  1021  1033  1034  1036  1037  1038  1039  1040  1041  1042
1043  1044

21

1045  1046


**DISTRICT 002**
**RICHMOND COUNTY**
VTD: 245201 - 201
VTD: 245202 - 202
010506:
  1001  1002  1003  1004  1005  1006  1008  1009  1010  1011
1012  1013
  1014  1015  1016  1017  1018  1019  1020  1021  1024  1025
1026  1027
  1028  1031  1032  1033  1034  1035  1036  1037  1038  1039
1040  1041
  1042  1043  1044
010508:
  1000  1001  1002  1003  1004  1005  1006  1008  1009  1010
1011  1012
  1013  1014  1015  1016  1017  1018  1019  1020  1021  1022
1023  1024
  1025  1026  1027  1028  1029  1030  1031  1032  1033  2000
2001  2002
  2003  2005  2006  2007  2008
010510:
  1000  1001  1002  1003  1004  1005  1006  1007  1008  1009
1010  1011
  1012  1013  1016  1017  1018  1019  1020
010511:
  2005
VTD: 245203 - 203
VTD: 245204 - 204
VTD: 245206 - 206
VTD: 245207 - 207
VTD: 245208 - 208
VTD: 245209 - 209
VTD: 245504 - 504
VTD: 245507 - 507
VTD: 245602 - 602
010510:
  2000  2001  2002  2003  2004  2005  2006  2007  2008  2009
2010  2011
  2012  2013  4000  4001  4002  4003  4004  4005  4006  4007
4008  4009
  4010  4011  4012  4013  4014  4015  4018  4019  4020  4021
4022

```
010511:
 2004
```

**DISTRICT 003**
**RICHMOND COUNTY**
```
VTD: 245101 - 101
001100:
 1024  1025  1026  1027  1032  1033  1034  1035  1038  1039
1040  1041
001200:
 1005  1006  1007  1008  1009  1010  1011  1012  1014  1015
1019  5000
 5004  5005
VTD: 245301 - 301
VTD: 245302 - 302
VTD: 245303 - 303
VTD: 245305 - 305
VTD: 245306 - 306
VTD: 245307 - 307
VTD: 245310 - 310
VTD: 245704 - 704
```

**DISTRICT 004**
**RICHMOND COUNTY**
```
VTD: 245304 - 304
VTD: 245401 - 401
010709:
 1000  1001  1003  1004  1005  1006  1007  1008  1009  1010
1011  2021
 2029  2030  2031  2032
VTD: 245402 - 402
VTD: 245404 - 404
VTD: 245405 - 405
010712:
 1024  3000  3001  3002  3003  3004  3005  3006  3007  3008
3009  3010
 3011  3012  3013  3014  3015  3016  3017  3018
VTD: 245406 - 406
VTD: 245407 - 407
VTD: 245408 - 408
```

**DISTRICT 005**
**RICHMOND COUNTY**
```
VTD: 245308 - 308
```

```
VTD: 245309 - 309
VTD: 245403 - 403
VTD: 245501 - 501
VTD: 245502 - 502
VTD: 245503 - 503
VTD: 245505 - 505
VTD: 245506 - 506
VTD: 245508 - 508
VTD: 245509 - 509
VTD: 245605 - 605
010509:
  2000  2001  2002  2003  2004  2005  2011  2013  2015
```

**DISTRICT 006**
**RICHMOND COUNTY**
```
VTD: 245401 - 401
010709:
  1002  2000  2001  2002  2003  2004  2005  2006  2007  2008
2009  2010
  2011  2012  2013  2014  2015  2016  2017  2018  2019  2020
2022  2023
  2024  2025  2026  2027  2028  2033
VTD: 245601 - 601
VTD: 245602 - 602
010508:
  2004  2009  2010  2011  2012  2013  2014  2015  2016  2017
2018  2019
  2020  2021  2022  2023  2024  2025  2026  2027  2028
010509:
  1000  1001  1002  1003  1004  1005  1006  1007  1008  1009
1010  1011
  1012  1013  1014  1015  1016  1017  1018  1019  1020  1021
1022  1023
  1025  1027  1030  1031
010510:
  4016  4017  4023  4024
VTD: 245603 - 603
VTD: 245604 - 604
VTD: 245605 - 605
010509:
  1024  1026  1028  1029  2006  2007  2008  2009  2010  2012
2014  2016
  2017  2018  2019  2020  2021  2022  2023  2024  2025  2026
2027  2028
  2029  2030  2031  2032  2033  2034  2035  2036
VTD: 245606 - 606
```

```
VTD: 245806 - 806
010906:
 2000  2002  2003  2004  2005  2006  2007  2008  2009  2010
2011  2012
 2013  2014  2015  2016  2017  2018  2019  2020  2021  2022
2023  2024
 2026  2027  2032
```

**DISTRICT 007**
**RICHMOND COUNTY**
```
VTD: 245701 - 701
VTD: 245702 - 702
VTD: 245703 - 703
VTD: 245705 - 705
VTD: 245706 - 706
VTD: 245707 - 707
```

**DISTRICT 008**
**RICHMOND COUNTY**
```
VTD: 245405 - 405
010711:
 1015  1016  1017  1018  1019
VTD: 245801 - 801
VTD: 245801B - 801B
VTD: 245802 - 802
VTD: 245803 - 803
VTD: 245804 - 804
VTD: 245804H - 804H
VTD: 245805 - 805
010706:
 1010  1011  1022  1023  1024  1025  1026  1027  1028  1029
1030  1031
 1032  1035
VTD: 245806 - 806
010906:
 1000  1001  1002  1003  1004  1005  1006  1007  1008  1009
1010  1011
 1012  1013  1014  1015  1016  1017  1018  1019  1020  1021
1022  1023
 1024  1025  1026  1027  1028  1029  1030  2025  2028  2029
2030  2031
VTD: 245807 - 807
VTD: 245808 - 808
VTD: 245809 - 809
```

# Court's Exhibit 2

Final Remedial Map for Two Super Districts



Richmond County Commission and School Board Super Districts- as drawn by Federal Court

Plan Name: **FedCt-RichCCSB-Sup-2012**       Plan Type : **Local**       User: **Gina**       Administrator: **FEDCT**

| DISTRICT | | POPULATION | DEVIATION | % DEVIATION | BLACK | % BLACK | BLACK COMBO | TOTAL BLACK | %TOTAL BLACK | HISP. OR LATINO | %HISP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 009 | | 100,240 | -35 | -0.03% | 69,902 | 69.73% | 1,757 | 71,659 | 71.49% | 4,137 | 4.13% |
| | VAP | 74,368 | | | 49,485 | 66.54% | 815 | 50,300 | 67.64% | 2,843 | 3.82% |
| 010 | | 100,309 | 34 | 0.03% | 38,731 | 38.61% | 1,601 | 40,332 | 40.21% | 4,070 | 4.06% |
| | VAP | 76,876 | | | 27,646 | 35.96% | 655 | 28,301 | 36.81% | 2,787 | 3.63% |

Total Population:       200,549
Ideal Value:       100,275

**Summary Statistics**

Population Range:       100,240   to   100,309
Absolute Overall Range:       69
Relative Range:       -0.03%   to   0.03%
Relative Overall Range:       0.07%

DATA SOURCE: 2010 US Census PL94-171 Population Cou

## SUPER DISTRICTS LEGAL DESCRIPTION

**DISTRICT 009**
**RICHMOND COUNTY**
VTD: 245101 - 101
001000:
 2015  2017  3001  3002  3003  3004  3005  3006  3009  3010
3011  3012
 3013  3014  3015  3016  3017  3020  3021
001100:
 1018  1028  1029  1030  1031  1042
001200:
 1000  1001  1002  1003  1004  1013  1020  1021  1022  1023
1024
001300:
 1010  2005  2006  2010  2011
VTD: 245102 - 102
VTD: 245103 - 103
VTD: 245104 - 104
VTD: 245105 - 105
VTD: 245106 - 106
VTD: 245107 - 107
VTD: 245108 - 108
VTD: 245109 - 109
VTD: 245110 - 110
VTD: 245111 - 111
VTD: 245112 - 112
VTD: 245113 - 113
VTD: 245201 - 201
VTD: 245202 - 202
VTD: 245203 - 203
VTD: 245204 - 204
VTD: 245205 - 205
VTD: 245206 - 206
VTD: 245207 - 207
VTD: 245208 - 208
VTD: 245209 - 209
VTD: 245304 - 304
VTD: 245308 - 308
VTD: 245309 - 309
VTD: 245401 - 401
010709:
 1000  1001  1003  1004  1005  1006  1007  1008  1009  1010
1011  2021
 2029  2030  2031  2032
VTD: 245402 - 402
VTD: 245403 - 403

29

```
VTD: 245404 - 404
VTD: 245405 - 405
010712:
 1024  3000  3001  3002  3003  3004  3005  3006  3007  3008
3009  3010
 3011  3012  3013  3014  3015  3016  3017  3018
VTD: 245406 - 406
VTD: 245407 - 407
VTD: 245408 - 408
VTD: 245501 - 501
VTD: 245502 - 502
VTD: 245503 - 503
VTD: 245504 - 504
VTD: 245505 - 505
VTD: 245506 - 506
VTD: 245507 - 507
VTD: 245508 - 508
VTD: 245509 - 509
VTD: 245602 - 602
010510:
 2000  2001  2002  2003  2004  2005  2006  2007  2008  2009
2010  2011
 2012  2013  4000  4001  4002  4003  4004  4005  4006  4007
4008  4009
 4010  4011  4012  4013  4014  4015  4018  4019  4020  4021
4022
010511:
 2004
VTD: 245605 - 605
010509:
 2000  2001  2002  2003  2004  2005  2011  2013  2015
VTD: 245805 - 805
010600:
 4146  4158  4161  4162
010706:
 1004  1005  1009  1012  1013  1014  1015  1016  1017  1018
1019  1020
 1021  1033  1034  1036  1037  1038  1039  1040  1041  1042
1043  1044
 1045  1046


DISTRICT 010
RICHMOND COUNTY
VTD: 245101 - 101
001100:
```

```
 1024   1025   1026   1027   1032   1033   1034   1035   1038   1039
1040   1041
001200:
 1005   1006   1007   1008   1009   1010   1011   1012   1014   1015
1019   5000
 5004   5005
VTD: 245301 - 301
VTD: 245302 - 302
VTD: 245303 - 303
VTD: 245305 - 305
VTD: 245306 - 306
VTD: 245307 - 307
VTD: 245310 - 310
VTD: 245401 - 401
010709:
 1002   2000   2001   2002   2003   2004   2005   2006   2007   2008
2009   2010
 2011   2012   2013   2014   2015   2016   2017   2018   2019   2020
2022   2023
 2024   2025   2026   2027   2028   2033
VTD: 245405 - 405
010711:
 1015   1016   1017   1018   1019
VTD: 245601 - 601
VTD: 245602 - 602
010508:
 2004   2009   2010   2011   2012   2013   2014   2015   2016   2017
2018   2019
 2020   2021   2022   2023   2024   2025   2026   2027   2028
010509:
 1000   1001   1002   1003   1004   1005   1006   1007   1008   1009
1010   1011
 1012   1013   1014   1015   1016   1017   1018   1019   1020   1021
1022   1023
 1025   1027   1030   1031
010510:
 4016   4017   4023   4024
VTD: 245603 - 603
VTD: 245604 - 604
VTD: 245605 - 605
010509:
 1024   1026   1028   1029   2006   2007   2008   2009   2010   2012
2014   2016
 2017   2018   2019   2020   2021   2022   2023   2024   2025   2026
2027   2028
 2029   2030   2031   2032   2033   2034   2035   2036
VTD: 245606 - 606
```

```
VTD: 245701 - 701
VTD: 245702 - 702
VTD: 245703 - 703
VTD: 245704 - 704
VTD: 245705 - 705
VTD: 245706 - 706
VTD: 245707 - 707
VTD: 245801 - 801
VTD: 245801B - 801B
VTD: 245802 - 802
VTD: 245803 - 803
VTD: 245804 - 804
VTD: 245804H - 804H
VTD: 245805 - 805
010706:
 1010   1011   1022   1023   1024   1025   1026   1027   1028   1029
1030   1031
 1032   1035
VTD: 245806 - 806
VTD: 245807 - 807
VTD: 245808 - 808
VTD: 245809 - 809
```