**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

KENNETH B. MARTIN; CHARLES N.   *
CODY, SR.; BOBBY D. HARPER;    *
SAMMIE L. SIAS; KENNETH L.    *
WILLIAMS; A.J. SAUNDERS; MELVIN  *
IVEY; GAIL HICKS; and JOE E.   *
HOWARD,            *
               *
  Plaintiffs,      *
               *
    v.        *   CV 112-058
               *
AUGUSTA-RICHMOND COUNTY,    *
GEORGIA, COMMISSION; DEKE S.   *
COPENHAVER, in his official   *
capacity as Mayor of Augusta-  *
Richmond County; RICHMOND    *
COUNTY, GEORGIA, BOARD OF    *
EDUCATION; ALEX HOWARD, in his *
official capacity as President *
of the Richmond County Board of *
Education; LYNN BAILEY, in her *
official capacity as Executive *
Director of the Richmond County *
Board of Elections; DAVID    *
RALSTON, in his official    *
capacity as Speaker of the   *
Georgia House of        *
Representatives; and TOMMIE   *
WILLIAMS, in his official    *
Capacity as President Pro    *
Tempore of the Georgia Senate, *
               *
  Defendants.      *

---

**O R D E R**

---

   This reapportionment case was initiated due to population

shifts in Richmond County, Georgia which were revealed by the

decennial 2010 census.   Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment seeking declaratory, injunctive, and remedial relief relating to the reapportionment of the districts for the Augusta-Richmond County Commission ("County Commission") and the Board of Education of Richmond County ("Board of Education"). (Doc. no. 1.)

## I. BACKGROUND

### A. Factual Background

Richmond County is one of 159 counties in Georgia.   For the purpose of electing members to the County Commission and the Board of Education, Richmond County is divided into eight single member districts (Districts 1-8) and two super districts (Districts 9-10).    The two super districts each contain approximately half of the county population.   Both the County Commission and the Board of Education consist of ten members, eight of whom are elected from the eight single member districts, and two of whom are elected from the two super districts.   The elections for both the County Commission and Board of Education are non-partisan.   Moreover, as the County Commission is the governing body for Augusta and Richmond County, and the Board of Education is the governing body for the Richmond County public school system, their members are required

2

to be elected in conformity with the Fourteenth Amendment of the United States Constitution.

The Richmond County districts were last redrawn in conjunction with the 2000 census.  The 2010 census, however, revealed shifts and changes in the location, volume, and composition of Richmond County's population making it apparent that the 2000 districts were no longer equally drawn.  As a result of the population shift, an Ad Hoc Redistricting Committee[1] passed, by unanimous vote, a redistricting plan (Plan 3R (Final)) that the Ad Hoc Committee believed was in compliance with the "one person, one vote" standard.[2]  On February 27, 2012, Wayne Howard, a member of the local Georgia House of Representatives delegation, submitted Plan 3R (Final) to the Georgia House as HB 923 (County Commission plan) and HB 924 (Board of Education Plan).  The Georgia General Assembly (the "General Assembly") has the authority, subject to the approval of the Governor, to redraw the County Commission and Board of Education districts, if necessary, after each decennial census.

---

[1]  The Ad Hoc Redistricting Committee was established by the local legislative delegation, the County Commission, and the Board of Education to consider and recommend a new redistricting plan for the County Commission and Board of Education.  The Ad Hoc Redistricting Committee consisted of four members of the legislative delegation, four members of the County Commission, and four members of the Board of Education.  Lynn Bailey, the Executive Director of the Richmond County Board of Elections, was a leading member of the Support Staff of the Ad Hoc Redistricting Committee.  The Ad Hoc Redistricting Committee had no legislative authority.

[2]  The approved Plan 3R (Final) was submitted to the County Commission and Board of Education as a recommendation only; the Ad Hoc Committee did *not* submit it to the Georgia Legislature for adoption.

While the Georgia House of Representatives approved Plan 3R (Final), the Senate approved a wholly separate plan. Thus, on March 29, 2012, the General Assembly adjourned the 2012 legislative session without enacting Plan 3R (Final) or adopting an alternative plan. The General Assembly was not scheduled to reconvene until after the date that qualifying for the County Commission and Board of Education member positions was scheduled to begin, and a special session was not anticipated.

### B. Procedural Background

Based upon these facts, on April 19, 2012, Plaintiffs filed suit against: the County Commission; the Board of Education; Deke S. Copenhaver, in his official capacity as Mayor of Augusta-Richmond County; Alex Howard, in his official capacity as President of the Richmond County Board of Education; and Lynn Bailey, in her official capacity as Executive Director of the Richmond County Board of Elections (collectively the "Local Defendants"). (Doc. no. 1.) In the Complaint, Plaintiffs sought declaratory, injunctive, and remedial relief with respect to the existing malapportioned districts. On May 8, 2012, Plaintiffs filed an Amended Complaint adding Defendants David Ralston, in his official capacity as Speaker of the Georgia House of Representatives, and Tommie Williams, in his official Capacity as President Pro Tempore of the Georgia Senate (the "State Defendants"). (Doc. no. 20.) Because of the approaching

4

dates for qualifying and the need to protect the citizens and elected officials of Richmond County, the Court entered an expedited scheduling order setting this matter for a hearing on May 16, 2012.

After conducting the hearing, the Court entered an Order declaring the existing districts for the County Commission and Board of Education unconstitutional because they violated the "one person, one vote" principle.  (Doc. no. 41.)   The Court enjoined further use of those unconstitutional districts and enjoined the County Board of Elections from accepting qualifications and conducting elections under the existing malapportioned County Commission and Board of Education district maps.  (Id.)  Due to the lack of constitutional districts, the Court devised remedial relief.  After creating preliminary maps and allowing the parties the opportunity to comment on those maps, the Court adopted final remedial maps in its June 19, 2012 Order.  (Doc. no. 52.)   These maps created constitutional districts under which the 2012 County Commission and Board of Education elections could proceed.

As instructed, the parties have now submitted briefs on the issue of attorney's fees pursuant to 42 U.S.C. § 1988. Additionally, in the interim, Plaintiffs filed a motion for default judgment against the State Defendants.  (Doc. no. 60.)

Thereafter, the State Defendants filed a motion for leave to file a motion to dismiss.   (Doc. no. 65.)

## II. DISCUSSION

Plaintiffs argue that because they are the prevailing parties in this matter, the Court, in its discretion, should award them attorney's fees in the amount of $46,546.50 and costs in the amount of $1,917.01, totaling $48,463.51.   Defendants disagree for numerous reasons.

### A. Plaintiffs Are Prevailing Parties

Pursuant to 42 U.S.C. § 1988, the prevailing party in a civil rights action is entitled to receive reasonable attorney's fees and costs.   In order to be a prevailing party for purposes of attorney's fees and costs, a party must be awarded some of its requested relief and have achieved an alteration in the legal relationship of the parties.   See Am. Disability Ass'n v. Chmielarz, 289 F.3d 1315, 1319 (11th Cir. 2002).   Plaintiffs argue that they are the prevailing parties in this action because the Court granted each of the remedies requested in their Amended Complaint: (1) a declaration that the districts for the County Commission and Board of Education were unconstitutional; (2) an injunction prohibiting the Board of Elections from holding elections based upon the unconstitutional

6

districts; and (3) the creation of a remedial redistricting plan based upon the 2010 census results.

### 1. *State Defendants' Arguments*

With respect to the State Defendants, they assert that Plaintiffs cannot be prevailing parties because the State Defendants are entitled to absolute legislative immunity. Plaintiffs argue that legislative immunity does not apply in this case, and even if it did, the State Defendants waived it by failing to raise it prior to the Court entering relief on all of Plaintiffs' claims.

### a) No Explicit Waiver of Legislative Immunity

In Scott v. Taylor, 405 F.3d 1251, 1255 (11th Cir. 2005), the Eleventh Circuit concluded that legislative immunity provides absolute immunity to legislator defendants in official capacity suits brought for prospective relief. The Eleventh Circuit further stated that legislative immunity is a personal defense and is effectively lost if the legislator defendants are forced to proceed to trial. Id. at 1253 n.2 & 1254-55. In his concurring opinion, Judge Jordan indicated that, as an affirmative defense, legislative immunity can be waived or forfeited, and unless raised, does not affect the power of a federal court to adjudicate. Id. at 1258 (Jordan, J., concurring).

7

The State Defendants contend that legislative immunity is a defense that cannot be waived. In support of their contention, they argue that Judge Jordan's concurrence in Scott is not binding precedent, and they cite to several cases from other circuits. None of these other cases directly address the issue of whether legislative immunity can be waived. Furthermore, the procedural history of Scott suggests that legislative immunity is a defense that can be waived. In Scott, after the close of discovery, the legislator defendants moved to amend their answer to include the defense of legislative immunity. Scott, 405 F.3d at 1253. This action suggests that the defense of legislative immunity was an affirmative defense that could be waived if not raised. Otherwise, there would have been no reason for the legislator defendants to amend their answer if legislative immunity cannot be waived.

However, in U.S. v. Helstoski, 442 U.S. 447, 490-491 (1979), the Supreme Court held that waiver of legislative immunity for federal legislators "can be found only after explicit and unequivocal renunciation of the protection." See also Favors v. Cuomo, -- F.R.D. --, No. 11-cv-5632, 2012 WL 3307449, at *16 (E.D.N.Y. Aug. 10, 2012) (finding waiver of legislative immunity must be explicit); Miles-Un-Ltd., Inc. v. New Shoreham, 917 F. Supp. 91, 100 (D.N.H. 1996) (same); 2BD Assoc. Ltd. P'ship v. Queen Anne's Cnty. Comm'rs, 896 F. Supp

528, 535 (D. Md. 1995) (same); cf. Brown v. Crawford Cnty., 960
F.2d 1002, 1010 n.13 (11th Cir. 1992) (deciding that although
the defendants failed to plead legislative immunity in their
answer, the motion to dismiss was treated as if it had been
filed at the appropriate time).   Federal courts have extended
absolute legislative immunity to state legislators to the same
extent as to federal legislators.   See Tenney v. Breedlove, 341
U.S. 367, 375-79 (1951).   Thus, it follows that like federal
legislators,   state   legislators   must   also   explicitly   and
unequivocally waive the defense of legislative immunity.

In this case, Plaintiffs contend that the State Defendants
waived the defense of legislative immunity by failing to raise
the defense until after the Court granted all substantive relief
except   for   the   award   of   attorney's   fees.     However,   the
procedural posture of this case weighs against finding that the
State Defendants explicitly waived their defense of legislative
immunity.   When this action was filed on April 19, 2012, the
State Defendants were not named as defendants.   On May 8, 2012,
the Amended Complaint added the State Defendants.   On May 16,
2012, one day after the State Defendants were served with the
Amended Complaint, the Court granted injunctive and declaratory
relief in this case.   Thereafter, on June 19, 2012, the Court
granted all requested relief against Defendants, including the
State Defendants, except for attorney's fees.   Thus, only two

months elapsed between the time of the filing of the original Complaint and the Court's June 19, 2012 Order.  Although the State Defendants failed to raise the defense of legislative immunity until July 20, 2012, the delay is made less egregious by the expedited nature of this case.

Furthermore, legislative immunity is an issue of public concern.  The defense of legislative immunity touches upon policies such as federalism, comity, and respect for the independence of democratic institutions.  See Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 628 (1st Cir. 1995).  One of the primary purposes of legislative immunity is to prevent courts from intruding into precincts that are constitutionally reserved to the legislative branch.  See id. at 629 n.6. Moreover, despite the failure to raise this argument earlier, the question of legislative immunity is a pure legal question that can be resolved on the record before the Court.  See id. at 628.  Based upon the foregoing, this Court cannot find that Plaintiffs have explicitly waived the defense of legislative immunity.  Thus, the Court considers whether legislative immunity applies to the State Defendants.

### b) Legislative Immunity Applies

Absolute legislative immunity "extends only to actions taken within the sphere of legitimate legislative activity." Finch v. City of Vernon, 877 F.2d 1497, 1505 (11th Cir. 1989).

10

The Eleventh Circuit has recognized that "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." DeSisto College, Inc. v. Line, 888 F.2d 755, 765 (11th Cir. 1989); see also Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1062 (11th Cir. 1992) (distinguishing legislators' conduct requiring legislative immunity from actions that are not protected).

Here, Plaintiffs' claim against the State Defendants arises solely from the State Defendants' failure to enact legislation to redistrict the County Commission and Board of Education. The passing of acts is the very essence of the legislative process, and any attempt to punish a legislator for such actions would manifestly tend "to control his conduct as a legislator." Gravel v. U.S., 408 U.S. 606, 618 (1972); see also Eslinger v. Thomas, 476 F.2d 225, 228 (4th Cir. 1973). The State Defendants' failure to enact a redistricting plan was quintessentially legislative, and the State Defendants are entitled to legislative immunity for this action. See Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 299 (D. Md. 1992) (finding that Maryland legislators' failure to enact an alternative redistricting plan was a legislative activity and thus any inquiry into the Maryland Legislature's failure to ratify an alternative plan was entirely barred pursuant to the defense of legislative

immunity.)    Accordingly,    the    State    Defendants    are    hereby **DISMISSED WITH PREJUDICE** from this action based upon the defense of absolute legislative immunity.

### 2. Local Defendants' Arguments

With respect to the Local Defendants, they assert that Plaintiffs cannot be prevailing parties because the Local Defendants agreed to all requested relief.   This argument, however, cannot be sustained.   As a result of Plaintiffs' suit, this Court declared the existing districts unconstitutional, enjoined the Board of Elections from conducting qualifying under the malapportioned districts, and provided a constitutional remedial plan.   This relief is precisely what the Plaintiffs requested, and thus Plaintiffs are prevailing parties.   See Ramos v. Koebig, 638 F.2d 838, 845 (5th Cir. 1981).[3]    That the Local   Defendants   admitted   the   unconstitutionality   of   the existing districts and consented to the injunction does not change this result.   See id.   Accordingly, Plaintiffs are prevailing parties with respect to the Local Defendants.

### B. Special Circumstances

Alternatively, the Local Defendants argue that even if Plaintiffs are prevailing parties, the "special circumstances" of this case would render an award of attorney's fees "unjust."

---

[3] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

Although § 1988 does not require that the Court award attorney's fees to the prevailing party in every case, the Court's discretion is extremely limited. <u>Mortham</u>, 950 F. Supp at 1122. The prevailing parties should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. <u>Id.</u> The burden of demonstrating special circumstances falls squarely on the Defendants, who must make a "strong showing" to justify denial of attorney's fees and costs to prevailing plaintiffs. <u>Martin v. Heckler</u>, 773 F.2d 1145, 1150 (11th Cir. 1985); <u>Riddell v. Nat'l Democratic Party</u>, 624 F.2d 539, 543 (5th Cir. 1980). "Defendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion." <u>Martin</u>, 773 F.2d at 1150. The Eleventh Circuit has recognized four situations which might constitute special circumstances justifying the denial of a fee award:

> (1) where the plaintiff's action asserted essentially a private tort claim for money damages; (2) where the plaintiff was not instrumental in achieving the remedy sought; (3) where [the plaintiff] challenged an antiquated, rarely enforced statute, and (4) where the plaintiff through a settlement or consent order agreed to compromise his right to pursue subsequent fees.

<u>Love v. Deal</u>, 5 F.3d 1406, 1410 (11th Cir. 1993).

As to special circumstances, the Local Defendants rely upon the fact that, at the time Plaintiffs filed suit, the Local Defendants were themselves preparing a similar lawsuit to

13

rectify the unconstitutional existing districts. The Local Defendants therefore argue that Plaintiffs' suit was not necessary. In support of this argument, the Local Defendants cite to Craig v. Gregg Cnty., Tex., 988 F.2d 18 (5th Cir. 1993). The facts of Craig, however, are distinguishable.

In Craig, by the time the plaintiff filed suit in the local district court, the county defendant had already presented a voting scheme to the Department of Justice and filed suit in the District of Columbia. Craig, 988 F.2d at 21. The Fifth Circuit found that the plaintiff was a late arriver attempting to "jump the train as it leaves the station and hop[ing] to seize prevailing plaintiff status." Id. Thus, because a civil rights plaintiff is not entitled to recover fees for demanding that a defendant "do something that [he] was going to do anyway[s]," the Fifth Circuit found that the plaintiff was not entitled to fees. Id.

Here, however, Plaintiffs led the train out of the station and were not required to "wait-and-see" whether the Local Defendants would file suit to enjoin the existing districts and ask for remedial relief. The initiation of this suit caused (1) the existing districts to be enjoined and declared unconstitutional and (2) remedial relief to be afforded. Although the Local Defendants could have sought the same relief and intended to do so does not mean that Plaintiffs' suit was

14

not instrumental in achieving the remedy sought.  Accordingly, the Local Defendants did not demonstrate special circumstances justifying the denial of a fee award, and Plaintiffs, as prevailing parties, are due reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### C. Amount of Attorney's Fees to Be Awarded

The next task before the Court is the determination of the amount of attorney's fees to be awarded.  This task is accomplished by multiplying the number of hours reasonably expended by a reasonable billing rate.  Blum v. Stenson, 465 U.S. 886, 897 (1984); Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  The product of that calculation is called the "lodestar."  Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986).

In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit enumerated twelve factors that may be considered in calculating a lodestar amount. See also Blanchard v. Bergeron, 489 U.S. 87, 91-92 (1989); Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1989). These factors are: (1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5)

the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.   Williams v. Bd. of Comm'rs of McIntosh Cnty., 938 F. Supp. 852, 857 (S.D. Ga. 1996) (citing Johnson, 488 F.2d at 717–19).

### 1. Hours Reasonably Expended

In determining the number of hours reasonably expended, the Court must consider whether the work sought to be compensated was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Del. Valley, 478 U.S. at 561 (citations omitted).   Courts must exclude hours that were "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.

Plaintiffs provided records of the hours worked by Laughlin McDonald, lead counsel, Jerry Wilson, McDonald's co-counsel, and Nancy Abudu, who assisted both McDonald and Wilson. Plaintiffs state that the attorneys worked the following hours:

McDonald:                    70.27 hours

Wilson:                      35.1 hours

16

Abudu:                              8.8 hours

After reviewing the attached affidavits and billing records provided by Plaintiffs, the Court finds that the requested hours should be compensated with respect to McDonald and Wilson with some exceptions,[4] but not with respect to Abudu.  Plaintiffs' efforts in litigating this matter were sufficiently and competently covered by their lead counsel, McDonald, and second chair, Wilson.  Their time logs enumerate considerable time spent in preparing the pleadings, various briefs, and other court filings.  Furthermore, when comparing McDonald and Wilson's time logs, there appears to be no duplication of effort. McDonald primarily prepared the pleadings and briefs, while Wilson spent most of his time reviewing and editing pleadings.

On the other hand, a review of Abudu's time log reveals that her entire efforts in this matter involved reviewing

---

[4] Because there is no evidence that Plaintiffs could not have hired competent local counsel, the Court will reduce McDonald and Wilson's hours for the time spent traveling from Atlanta to Augusta. See Barlow v. Sun Life and Health Ins. Co., No. 3:09-cv-1063, 2011 WL 3475298, at *2 (M.D. Fla. Aug. 9, 2011); McClelland v. HSBC Retail Servs., Inc., No. 2:08-cv-708, 2011 WL 32423, at *3-4 (M.D. Fla. Jan. 5, 2011); Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1379 (M.D. Fla. 2010) (deducting attorney travel time from fee because defendant should not be required to pay for plaintiff's choice to hire counsel from out of town).

The Court will also reduce Wilson's hours for clerical work.  Work that is clerical or secretarial in nature, such as gathering, copying, mailing, and filing documents is not separately compensable as attorney's fees.  See Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002); Fulford v. NCO Fin. Sys., Inc., No. 6:07-cv-1196, 2008 WL 2952859, at *8 (M.D. Fla. July 30, 2008) (finding that revising the summons and coordinating service are clerical tasks which are not compensable).

17

emails, pleadings, and Court Orders, as well as attending a hearing that Wilson and McDonald both attended. None of Abudu's records indicate that she revised or drafted any portion of any filings. Because both McDonald and Wilson also reviewed all these documents, billing by Abudu with respect to "reviewing" emails, drafts, and Court Orders does not reflect "a distinct contribution" and, therefore, Abudu did not carry her burden of demonstrating that she was entitled to recover fees for these hours. See ACLU v. Barnes, 168 F.3d 423, 432-33 (11th Cir. 1999). Furthermore, there is nothing in Abudu's declaration or time logs indicating why her presence was necessary at the injunction hearing. As such, Abudu shall not be awarded any fees for the time she submitted in this case.

### 2. Reasonable Hourly Rate

A reasonable rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299; see also Blum, 465 U.S. at 895-96. It has been held that a voting rights attorney possesses skills comparable to an attorney practicing in complex areas, such as antitrust law or highly technical bankruptcy matters. Williams, 938 F. Supp. at 858. Moreover, the relevant legal community is the district in which the Court sits, that being the Southern District of Georgia. See Knight v. Alabama, 824 F. Supp. 1022,

18

1027 n.1 (N.D. Ala. 1993) (citing Turner v. Secretary of Air Force, 944 F.2d 804, 808 (11th Cir. 1991)).

The party seeking an award of attorney's fees bears the burden of establishing that the requested rate is reasonable. Blum, 465 U.S. at 895-96 n.11; Norman, 836 F.2d at 1299. This burden may be met by a showing of an attorney's hourly billing rate on cases with similar complexity and skill. Knight, 824 F. Supp. at 1028.

Plaintiffs submit that McDonald should be compensated at $450.00 per hour and that Jerry Wilson should be compensated at $350.00 per hour. Each requested rate will be evaluated in turn.

### a) Laughlin McDonald

Voting Rights litigation is, in and of itself, an extremely complex and intimidating area of the law. See Medders v. Autauga Cnty. Bd. of Educ., 858 F. Supp. 1118, 1125 (M.D. Ala. 1994) ("[E]ven the simplest one-person-one-vote case would be formidable to an attorney unfamiliar with voting rights law."). As a result, attorneys practicing in this area must possess much skill and experience, two qualities which McDonald enjoys. (See McDonald Aff. ¶ 10.)

McDonald requests a fee of $450.00 per hour. In support of that rate, he puts forth a survey released by the Daily Report indicating that attorneys in the Atlanta area billed at an

19

average of $484.00 per hour, with the highest partner billing rate of $900.00. Plaintiffs contend that their attorneys should be compensated at Atlanta billing rates rather than those applicable to the Augusta Division of the Southern District of Georgia. Plaintiffs rely upon <u>Brooks v. Georgia State Board of Elections</u>, 997 F.2d 857, 869 (11th Cir. 1993), for the proposition that Atlanta billing rates can be applied where there is evidence that there are no local attorneys familiar with voting rights actions.

The Court may award a non-local hourly rate if, and only if, Plaintiffs demonstrate "a lack of attorneys practicing in [the Southern District] who are willing and able to handle [their] claims." <u>Barnes</u>, 168 F.3d at 437 (citing <u>Cullens v. Ga. Dep't. of Transp.</u>, 29 F.3d 1489, 1494 (11th Cir. 1994) (finding that district court did not err by awarding Macon, Georgia rates because "plaintiffs did not meet their burden of showing a lack of Macon lawyers willing or able to handle their individual claims")). Here, Plaintiffs have not put forth any evidence that there are no local attorneys with the skills and familiarity to have handled this case. Instead, Plaintiffs rely on an affidavit that indicates that "[P]laintiffs were not *aware* of any local attorneys in Augusta or Richmond County that had special expertise in voting cases and would have represented them on a pro bono basis." (Martin Aff. ¶ 2 (emphasis added).)

This evidence does not prove that there were *not any* local attorneys able to take this case on – rather, it merely proves that Plaintiffs did not *know of any*. This evidence is insufficient to support an Atlanta billing rate. See Barnes, 168 F.3d at 437.

A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Although counsel may command fees at a higher rate in Atlanta, the Court does not believe that the Augusta legal market would bear such billing for the services rendered in the present case. This Court has previously approved $250.00 per hour as a reasonable billing rate in the Augusta legal market. See Johnson v. YKK Am., Inc., No. 3:07-cv-048, doc. no. 171 (S.D. Ga. April 29, 2010); Ingram v. Kellogg's Sales Co., No. 1:09-cv-021, doc. no. 39 (S.D. Ga. Feb. 24, 2010); Salazar v. Milton Ruben Chevrolet, Inc., No. 1:06-cv-195, doc. no. 86 (S.D. Ga. Mar. 6, 2009). This billing rate is in line with other fee awards in other similarly complicated cases. See Fisher v. Trutech, Inc., No. 5:04-cv-109, 2006 WL 3791977, at *5 (M.D. Ga. Nov. 16, 2006) (finding that based on the complicated and specialized nature of the ERISA action, together with the attorney's over twenty years of

21

experience and prevailing rates in the Middle District of Georgia, a billing rate of $200 was reasonable); see also Grable v. Gregory J. Barro, PLC, No. 1:05-cv-3133, 2007 WL 879584, at *5 (N.D. Ga. Mar. 20, 2007) (finding the relevant range of billing rates to be $175-$380 per hour in other cases from the Eleventh Circuit, including ERISA cases). Upon consideration of the circumstances of this case, the relevant legal market, and McDonald's considerable experience and expertise, McDonald's billing rate will be set at $300.00 per hour.

### b) Jerry Wilson

As with McDonald, the Johnson factors considering the undesirability and complexity of the case are relevant, as is the skill of Wilson. Wilson indicates that he has served as counsel or co-counsel in voting rights cases in nineteen Georgia counties and cities. (Wilson Aff. ¶ 4.) Furthermore, Wilson testified as an expert witness in thirty federal voting rights cases from 1982 until 1998 concerning demographic analysis and political redistricting. (Id. ¶ 3.)

A review of Wilson's billing records, however, indicates that much of his time was spent completing tasks commensurate to that of an associate. Specifically, Wilson's records indicate that his main duties included reviewing and editing drafts of pleadings. For this reason, the Court uses its own experience and judgment in determining Wilson's rate. Based upon the work

that Wilson performed, as well as his skill and experience, the Court determines that a rate of $250.00 per hour is appropriate.

### 3. Lodestar

Based on the above, the Court finds the lodestar in this case to be:

McDonald   $300.00/hour at 58.27 hours   $17,481.00

Wilson      $250.00/hour at 17.5 hours    $4,375.00

Thus, the total lodestar in this case is $21,856.00.[5]

### 4. Costs and Expenses

The expenses incurred in voting rights litigation are intertwined with an award of reasonable attorney's fees. Williams, 938 F. Supp. at 860.  The Eleventh Circuit has spoken that, in order to further the purpose of civil rights litigation, "[r]easonable attorneys' fees . . . must include reasonable expenses . . . as equally vital components of the cost of litigation." Dowdell v. City of Apopka, 698 F.2d 1181, 1190 (11th Cir. 1983).  As such, all reasonable expenses incurred during litigation, with the exception of routine office overhead, are recoverable as litigation expenses.  Id. at 1192. Because it has already been established that Plaintiffs are entitled to attorney's fees, it is clear that Plaintiffs are

---

[5] At this point it is usually necessary to determine whether the lodestar should be enhanced or diminished.  Williams, 938 F. Supp. at 859 n.9.  Neither party has asked for such an adjustment, and the Court has found that no adjustment is necessary.  Id.  (citing Del. Valley, 478 U.S. at 565-66 (noting the strong presumption that the lodestar amount represents the reasonable fee award and, thus, the lodestar should only be adjusted in rare and exceptional circumstances)).

also entitled to reimbursement for their expenses, provided that such expenses are reasonable.

Plaintiffs will be reimbursed for expenses incurred by their attorneys in traveling to represent them in this Court, as well as costs such as filing fees and process server fees. See id. Expenses for meals, while reasonable in amount, will be excluded as expenses which would be incurred regardless of the legal representation. Burke ex rel. Burke v. Keenum, No. 2:88-cv-067, 1989 WL 14681, at *9 (S.D. Ga. Feb. 21, 1989). Accordingly, the Court finds Plaintiffs' costs and expenses to be:

| | |
|---|---|
| Filing fees: | $350.00 |
| Admission fees: | $200.00[6] |
| Certification fees: | $18.00 |
| Travel costs: | $229.24 |
| Hotel costs: | $266.80 |

Thus, Plaintiffs' total costs and expenses in this case are $1064.04.

### III. CONCLUSION

Based upon the forgoing, Plaintiffs' motion for attorney's fees (doc. no. 53) is **GRANTED IN PART** and **DENIED IN PART**. The

---

[6] Because Ms. Abudu's work was found to be duplicative of Wilson and McDonald's work, her admission fees to the Southern District of Georgia will be excluded.

Clerk is **DIRECTED** to enter judgment in favor of Plaintiffs and against the Local Defendants for $21,856.00 in attorney's fees and $1064.04 in costs and expenses. To the extent that this expense award includes Plaintiffs' compensable costs pursuant to 20 U.S.C. § 1920, Plaintiffs should not file a Bill of Costs. It is further **ORDERED** that the State Defendants are **DISMISSED WITH PREJUDICE.** Finally, Plaintiff's Motion for Default Judgment (doc. no. 60) and the State Defendants' Motion for Leave to File (doc. no. 65) are **DENIED AS MOOT**. The Clerk is **DIRECTED** to terminate all deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of November, 2012.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

25